# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

W.C. BRADLEY CO. and CHAR-BROIL, LLC,

    Plaintiffs,

v.

    CASE NO.: 4:16-CV-195 (LJA)

WEBER-STEPHEN PRODUCTS, LLC,

    Defendant.

## ORDER

Before the Court are:

(1) Defendant Weber Stephen Products LLC's Motion for Partial Summary Judgment Regarding Termination of the 1974 Agreement (Doc. 24);

(2) Plaintiffs W.C. Bradley Co. and Char-Broil, LLC's Cross-Motion for Partial Summary Judgment that the 1974 Agreement Remains in Effect (Doc. 35); and

(3) Plaintiffs W.C. Bradley Co. and Char-Broil, LLC's Motion for Oral Argument on Cross-Motions for Summary Judgment (Doc. 45).

For the reasons set forth below:

(1) Defendant Weber Stephen Products LLC's Motion for Partial Summary Judgment Regarding Termination of the 1974 Agreement (Doc. 24) is **DENIED**;

(2) Plaintiffs W.C. Bradley Co. and Char-Broil, LLC's Cross-Motion for Partial Summary Judgment that the 1974 Agreement Remains in Effect (Doc. 35) is **GRANTED**; and

(3) Plaintiffs W.C. Bradley Co. and Char-Broil, LLC's Motion for Oral Argument on Cross-Motions for Summary Judgment (Doc. 45) is **DENIED**.

1

# BACKGROUND

## I. Procedural Background

This is a consolidated matter, the Court having granted the Parties' Joint Motion to Consolidate *Weber-Stephen Products LLC v. W.C. Bradley Co.,* et al., 4:16-CV-347 with the present action, *W.C. Bradley Co.,* et al., *v. Weber-Stephen Products LLC*, 4:16-CV-195. (Doc. 23.) On April 20, 2016, Defendant/Counter-Plaintiff Weber-Stephen Products, LLC ("Defendant") filed a Complaint against Plaintiffs/Counter-Defendants W.C. Bradley Co. and Char-Broil, LLC ("Plaintiffs") in the Northern District of Illinois. (Doc. 1, Case No. 4:16-CV-347.) Therein, Defendant alleges causes of action including: (1) trademark infringement; (2) trade dress infringement; (3) unfair competition; (4) false designation of origin; and (5) trademark dilution. (*Id.*) On June 14, 2016, Plaintiffs initiated the present action by filing a Complaint in this Court against Defendant. (Doc. 1.) Therein, Plaintiffs allege causes of action including: (1) breach of settlement agreement; (2) antitrust violations; and (3) unfair competition under both Georgia and federal law. (*Id.*)

On October 31, 2016, Defendant's action, filed in the Northern District of Illinois, was transferred to this Court. On November 21, 2016, Plaintiffs filed a Counterclaim against Defendant alleging: (1) cancellation of federally registered trade dress; and (2) a declaration of the Parties' rights regarding Defendant's claim that Plaintiffs infringed Defendant's trade dress rights in a three-legged kettle design. (Doc. 49, Case No. 4:16-CV-347.) On December 22, 2016, the Court granted the Parties' Joint Motion to Consolidate their cases. (Doc. 23.) Accordingly, Case No. 4:16-CV-347 was terminated and consolidated with the present action.

On December 22, 2016, Defendant moved for partial summary judgment on the sole issue of whether a settlement agreement executed in 1974 by the Parties' predecessors ("1974 Agreement") was lawfully terminated. (Doc. 24.) Therein, Defendant argues that the 1974 Agreement was terminated and that the Parties are no longer bound by its terms. (*Id.*) The Parties timely submitted their respective Response and Reply. (Docs. 33, 41.) As such, the Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

On January 26, 2017, Plaintiffs cross-moved for partial summary judgment on the same issue. (Doc. 35.) Plaintiffs argue that Defendant is barred from unilaterally terminating the 1974 Agreement and that the Agreement is still binding on the Parties. (*Id.*) The Parties timely submitted their respective Response and Reply. (Docs. 42, 44.) As such, the Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

**II. Factual Background**

Plaintiff W.C. Bradley Co. ("W.C. Bradley") is a Georgia corporation with its principal place of business in Columbus, Georgia.[1] (Doc. 34 ¶ 1.) Plaintiff Char-Broil, LLC ("Char-Broil") is a Georgia limited liability company based in Columbus, Georgia. (Doc. 34 ¶ 2.) Char-Broil is wholly-owned by W.C. Bradley. (Doc. 34 ¶ 3.) Defendant Weber-Stephen Products LLC ("Weber") is a Delaware limited liability company with its principal place of business in Palatine, Illinois. (Doc. 34 ¶ 6.)

In the early 1970s, after the successful launch of Weber's iconic three-legged kettle grill, W.C. Bradley's predecessor, W.C. Bradley Company, began marketing the WILLIAM WEBSTER GRILL. (Doc. 38 at 2, Case No. 4:16-CV-347.) On March 26, 1973, Weber's predecessor, Weber-Stephen Products Company, sued W.C. Bradley Company, alleging that W.C. Bradley Company's brand WILLIAM WEBSTER GRILL infringed Weber's: (1) utility patent in the tripod leg attachment system; (2) trademark; and (3) trade dress rights in the overall configuration of a three-legged kettle grill (the "Prior Litigation"). (*Id.*) W.C. Bradley Company asserted counterclaims, including an antitrust claim. (Doc. 41-1 ¶ 2.) Prior to trial, on October 29, 1974, Weber-Stephen Products Company and W.C. Bradley Company entered into the 1974 Agreement, settling their claims against each other. (Doc. 34 ¶ 8.) The 1974 Agreement included provisions in which the parties agreed to dismiss with prejudice

---

[1] The relevant facts are derived from Plaintiffs' Complaint (Doc. 1), Defendant's Complaint (Doc. 1, Case No. 4:16-CV-347), Plaintiffs' Counterclaim (Doc. 49, Case No. 4:16-CV-347), the Parties' Statements of Undisputed Facts and Responses to Statements of Undisputed Facts (Docs. 24-2, 34, 41-1, 42-1, 44-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

the claims they had asserted against each other. (Doc. 41-1 ¶ 7.) The 1974 Agreement was filed in this Court; and accordingly, the Parties' claims were dismissed with prejudice. (Doc. 41-1 ¶ 8.)

The 1974 Agreement contains the following nine provisions:

(1) [W.C. Bradley Company] agrees that [Weber-Stephen Products Company]'s trademark WEBER and the registration thereof are valid and owned by [Weber-Stephen Products Company].

(2) [W.C. Bradley Company] agrees to refrain from using the words or names WILLIAM WEBSTER, WEBSTER, or any variant thereof on, or with respect to, all covered barbecue grills from this date forward, except as provided herein below. Open-top braziers and hibachi-style grills are excluded from this restriction.

(3) [W.C. Bradley Company] shall have the right to sell or otherwise dispose of all its existing finished goods inventory of grills identified by the name WILLIAM WEBSTER. This right shall expire April 15, 1975. [W.C. Bradley Company]'s customers shall have the right to sell or otherwise dispose of WILLIAM WEBSTER grills received from [W.C. Bradley Company] without limitation.

(4) [Weber-Stephen Products Company] shall pay to [W.C. Bradley Company] the amount of $10,000.00 within 30 days of this date and an additional $10,000.00 within one year from this date.

(5) [Weber-Stephen Products Company] waives past damages and hereby grants to [W.C. Bradley Company] a covenant not to sue [W.C. Bradley Company] under U.S. Patent No. 3,538,906 (the patent in suit) for the remaining unexpired term of said patent, this covenant extending to [W.C. Bradley Company]'s customers, suppliers, warehousemen and dealers for purposes of [W.C. Bradley Company]'s business only.

(6) [W.C. Bradley Company] shall have the right to continue to market a kettle grill, without restriction as to its configuration, under names or trademarks other than WEBSTER, WILLIAM WEBSTER, and variants thereof. This right

shall include a non-exclusive, non-transferable license under U.S. trademark application Serial No. 413,832, filed January 26, 1972, the trademark thereof, and under any registration that may issue therefrom as well as any continuation or substitution of said application.

(7) [W.C. Bradley Company] agrees to and hereby does dismiss its antitrust counterclaim with prejudice.

(8) [Weber-Stephen Products Company] herewith agrees to and hereby does dismiss its complaint and each count thereof with prejudice.

(9) Each party shall bear its own costs and attorneys' fees.

W.C. Bradley Company continued to market the accused kettle grill for a phase-out period, then completely ceased selling three-legged kettle grills until September of 2014, (Doc. 38 at 2, Case No. 4:16-CV-347) when the Kettleman TRU-Infrared™ 22.5" Charcoal Grill (the "Accused Product") was first released to the market by Char-Broil. (Doc. 34 ¶ 6.) On March 17, 2016, Weber filed a complaint against W.C. Bradley and Char-Broil in the Northern District of Illinois, alleging infringement and dilution of Weber's three-legged kettle grill design ("the March action"). (Doc. 38 at 2, Case No. 4:16-CV-347.) Subsequently, W.C. Bradley and Char-Broil cited the 1974 Agreement as evidence of their right to market the Kettleman Grill. (*Id.*) On April 20, 2016, Weber voluntarily dismissed the March action and wrote an e-mail to W.C. Bradley stating the following:

> To the extent that the 1974 Agreement actually provides [W.C. Bradley and Char-Broil] with a license to Weber's 3-legged kettle grill design and the Trademarks-in-suit (which we dispute), and to the extent such a license has not already expired (which we also dispute), then please be advised that Weber hereby formally TERMINATES any and all license rights allegedly granted under the 1974 Agreement, effective IMMEDIATELY.

(Doc. 24-5 (emphasis in original).) The same day, Weber filed a second Complaint against W.C. Bradley and Char-Broil, which was later transferred to this Court. (Doc. 38 at 3, Case No. 4:16-CV-347.) The only difference between the Complaint in the March action and

Weber's Complaint in the instant action is the added allegation that Weber "formally and lawfully terminated any and all license rights prior to filing this Complaint." (*Id.*)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003) (citing Fed. R. Civ. P. 56(c)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact "is 'genuine' if 'the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Liquidating Trustee Ester DuVal of KI Liquidation, Inc. v. U.S.*, 89 Fed. Cl. 29, 37-38 (2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is

some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Conoco, Inc. v. Department of Energy*, 99 F.3d 387, 393-95 (Fed. Cir. 1996). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Liquidating Trustee.*, 89 Fed. Cl. at 37. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (citation omitted). Cross-motions may, however, "be probative of the nonexistence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* Nevertheless, the Court must evaluate each motion separately, "as each movant bears the burden of establishing that no genuine issue of material facts exists, and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004); *see also D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn.").

In Georgia, "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1; *see also Brookside Ctys., LLC v. Lake Dow North Corp*, 603 S.E.2d 31, 32 (Ga. Ct. App. 2004) ("Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."). "The cardinal rule of construction [of an agreement] is to ascertain the intention of the parties. Where the terms of the contract are clear and unambiguous, the court looks only

7

to the contract to find the parties' intent." *Forsyth Cty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 630 (2010). Furthermore, "parts of a contract must be read in conjunction with one another so as to harmonize the various parts." *Id.* (citing *Knott v. Knott*, 277 Ga. 380, 382(2) (2003)).

## **DISCUSSION**

### I. Is the 1974 Agreement Binding

As a threshold issue, the Court must address whether the 1974 Agreement, made by the Parties' predecessors, is binding on the Parties to the instant action. In their Motion, Plaintiffs request a declaration that the 1974 Agreement binds Plaintiffs and Defendant and remains in effect. (Doc. 36 at 11.) In response, Defendant argues that the 1974 Agreement "expressly does not apply to parents, subsidiaries, affiliates, successors, assigns or any other entity." (Doc. 42 at 3 n.3.) Defendant then notes that "[n]otwithstanding, for simplicity, Weber's motion is limited to the termination issue." (*Id.*) While they acknowledge that the 1974 Agreement does not include an express provision binding any party except the signatories, Plaintiffs argue that the 1974 Agreement is binding on the privies of Weber-Stephen Products Company and W.C. Bradley Company because of the 1974 Agreement's *res judicata* effects. (Doc. 36 at 11.)

"Federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *CSX Transp. Inc., v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003). Given that the Prior Litigation was filed and the judgment entered in this Court, federal preclusion principles apply. *See id.* The Supreme Court has held that "[u]nder *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." In *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, the Eleventh Circuit distinguished the *res judicata* effects of a settlement agreement from those of any other judgment. 371 F.3d 1285 (11th Cir. 2004). In its analysis, the court stated: "Where the parties consent to [a dismissal pursuant to Rule 41] based on a settlement agreement . . . the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Id.* at 1288. The court reasoned that:

8

> In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself. Consequently, the scope of the preclusive effect of the [dismissal of prior litigation] should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law.

*Id.* In *Ruple v. Hartford Life and Acc. Ins. Co.*, the Eleventh Circuit further held, "[i]n order to determine what claims are barred as a result of the settlement agreement, we look to the agreement itself to determine what claims the parties intended to be finally and forever barred by the dismissal." 340 F. App'x 604, 610 (2009).

For the purposes of *res judicata*, Plaintiff W.C. Bradley Co. is in privity with W.C. Bradley Company, and Defendant Weber-Stephen Products, LLC is in privity with Weber-Stephen Products Company. Both Parties acknowledge that the signatories of the 1974 Agreement are their "predecessor" companies. (Doc. 42-1 ¶ 1.) Defendant Weber-Stephen Products, LLC claims ownership of the right granted to W.C. Bradley Company by Weber-Stephen Products Company in the 1974 Agreement, and Plaintiff W.C. Bradley Co. also claims an interest in that right; thus, the Parties admit they have succeeded to the Signatories' interests in the property at issue. *See Blocker Farms of Fla, Inc. v. Bell*, 2014 WL 12573839 *1, *3 (S.D. Ga. Sept. 15, 2014) (citing *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) ("Courts in the [Eleventh Circuit] considering the concept of privity for purposes of *res judicata* have recognized that privity is a flexible concept, applicable to any one of several special relationships . . . including where the nonparty has succeeded to the party's interest in property.")). As the Parties to the instant action are in privity with the signatories of the 1974 Agreement, the *res judicata* effects of the 1974 Agreement are binding on Plaintiffs and Defendant. Accordingly, the Parties are precluded from re-litigating the issues resolved by the 1974 Agreement, notably, for purposes of this Motion that:

9

> W.C. Bradley[2] shall have the right to continue to market a kettle grill, without restriction as to its configuration, under names or trademarks other than WEBSTER, WILLIAM WESBTER, and variants thereof. This right shall include a non-exclusive, non-transferable license under U.S. trademark application Serial No. 413, 832, filed January 26, 1972, the trademark thereof, and under any registration that may issue therefrom as well as any continuation or substitution of said application.

(*See* Doc. 24-3).

## II. Termination

The question before the Court is limited in scope to whether the 1974 Agreement is terminable at will by either party because it is of indefinite duration.[3] Defendant argues that it lawfully terminated the 1974 Agreement because: "(1) the agreement is indefinite in duration, and thus terminable at will; and (2) Weber provided notice of termination in 2016, a reasonable time . . . after the agreement was executed." (Doc. 24-1 at 1.) In contrast, Plaintiffs argue that Defendant cannot unilaterally terminate the 1974 Agreement because it defines the *res judicata* effects of the Prior Litigation.

In support of its Motion, Defendant relies on the principle of contract law instructing that contract provisions of indefinite duration are terminable at the will of either party. (Doc. 24-1 at 5 (citing *Voyles v. Sasser*, 221 Ga. App. 305, 305 (1996) ("[T]he provision at issue was for an indefinite period and was thus terminable at either party's will.")).) Defendant asserts that "[i]t is undisputed that the alleged license in this case is for an indefinite period." (Doc. 24-1 at 5.) Further, Defendant argues, the 1974 Agreement has "(1) no expiration clause; (2) no set duration; and (3) no provision establishing the grounds or process for termination." (*Id.*) Thus, Defendant concludes, the 1974 Agreement is a contract of indefinite duration, terminable at the will of either party.

---

[2] The Court notes that Char-Broil is the Party marketing the Accused Product in the present case. However, because Char-Broil is wholly owned by W.C. Bradley (Doc. 34 ¶ 3), the Court uses W.C. Bradley for ease of reference.

[3] While there may, at some point, be a question regarding the applicability of the provisions of the 1974 Agreement to the trademarks at issue, the Court does not opine on whether the Accused Product is covered by the relevant provisions of the 1974 Agreement. Rather, the Court's holding is limited to whether the 1974 Agreement was lawfully terminated.

In their Cross-Motion, Plaintiffs argue that Defendant "cannot unilaterally 'terminate' the 1974 Agreement because [Defendant] now wants to re-assert claims that it settled long ago." (Doc. 36 at 2.) The specific provision at issue is Paragraph Six, which states the following:

> (6) [W.C. Bradley Company] shall have the right to continue to market a kettle grill, without restriction as to its configuration, under names or trademarks other than WEBSTER, WILLIAM WESBTER, and variants thereof. This right shall include a non-exclusive, non-transferable license under U.S. trademark application Serial No. 413, 832, filed January 26, 1972, the trademark thereof, and under any registration that may issue therefrom as well as any continuation or substitution of said application.

("Paragraph Six") (Doc. 24-3.)

Defendant contends that Paragraph Six provides Plaintiffs with no more than a license under U.S. trademark application Serial No. 413, 832 ("the '832 License"). That is not the case. Paragraph Six contains two sentences. The first gives Plaintiffs "the right to continue to market a kettle grill, without restriction as to its configuration, under names or trademarks other than WEBSTER, WILLIAM WEBSTER, and variants thereof." (Doc. 24-3.) The second sentence notes that the right to market a kettle grill includes "a non-transferable license under U.S. trademark application Serial No. 413,832, filed January 26, 1972, the trademark thereof, and under any registration that may issue therefrom as well as any continuation or substitution of said application." There is no language stating that the right granted in the first sentence is limited to the '832 License. Rather, in order to give full meaning to the contract, the Court construes the term "include" necessarily to encompass more than just the '832 License. Construing the term otherwise would render the first sentence of Paragraph Six meaningless. *See Willesen v. Ernest Commc'ns, Inc.*, 323 Ga. App. 457, 462 (2013) ("[T]he construction which will uphold a contract in whole and in every part is to be preferred, and . . . a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless.") (citations omitted). As such, the "right" granted to Plaintiffs in Paragraph Six is greater than the license explicitly named in the second sentence.

11

Defendant's ultimate argument is premised upon the assertion that Paragraph Six is of indefinite duration, and is therefore terminable. In Georgia, for a settlement agreement to be enforceable:

> [T]he parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain or indefinite. In considering whether a contract is unenforceable, however, a trial court must bear in mind that the law leans against the destruction of contracts on the ground of uncertainty, and the uncertainty and indefiniteness at issue must be 'extreme' to warrant the conclusion that a contract cannot be enforced . . . . *It is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.* This is particularly true with respect to settlement agreements, which are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits.

*Triple Eagle Assocs., Inc., v. PBK, Inc.*, 307 Ga. App. 17, 19-20 (2010) (emphasis added). Further, the Court of Appeals of Georgia has indicated that in some instances, even when a durational provision *is* indefinite, it does not necessarily render the contract unenforceable. In *Mori Lee v. Just Scott Designs, Inc.,* the Court of Appeals of Georgia addressed a settlement agreement that was to continue "for as long as both parties conducted business." 325 Ga. App. 625, 630 (2014) (physical precedent only). Despite arguments that the settlement agreement was uncertain because of its indefinite duration, the court held that this durational provision did not render the contract void. (*Id.*) In so holding, the court stated, "The agreement also provided that this arrangement would continue for as long as both parties conducted business, and this indefinite duration did not render the agreement void . . . . We see no ambiguity in the agreement and there was a meeting of the minds as to the future course of business between the parties." *Id.* "[A contract's terms] will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." *Triple Eagle*, 307 Ga. App. at 19.

12

Applying the proper rules of construction—namely that the Court is to look to the contract to ascertain the intent of the parties and to read the parts of the contract "in conjunction with one another so as to harmonize the various parts," *Forsyth*, 303 Ga. App. at 630—it is clear that the parties intended no limitation, other than the name/trademark, on W.C. Bradley Company's right to market kettle grills. In order to settle a complaint of trademark infringement and an antitrust cross-claim, the parties drafted a holistic settlement agreement to resolve all outstanding issues. First, the parties agreed that the Weber trademarks and registration were valid. Notably, the parties did not say how long the agreement that the trademark and registration was valid would last. Next, W.C. Bradley Company agreed to "refrain from using the words or names WILLIAM WEBSTER, WEBSTER, or any variant thereof" on all covered barbecue grills. Then the signatories agreed that W.C. Bradley Company could sell off its existing stock of kettle grills bearing the name WILLIAM WEBSTER. Importantly, the parties agreed that said right would expire on April 15, 1975. Then Weber-Stephen Products Company waived the right to any past damages and granted a covenant not to sue under the 3,538,906 patent and explicitly provided that the covenant not to sue would expire when the patent expired. Next, the parties agreed that W.C. Bradley Company would have the right to market kettle grills as long as they did not bear any proscribed names or trademarks. No other limitation was placed on W.C. Bradley Company's right to market these grills. Under the next provision of the agreement, W.C. Bradley Company agreed to dismiss its antitrust claim against Weber-Stephen Products Company. Finally, Weber-Stephen Products Company agreed to drop its complaint, and both parties agreed to bear their own costs and attorney's fees.

The provision in question clearly sets forth the only limitation the parties intended to impose on W.C. Bradley Company's right to market kettle grills—how it named them. The omission of an explicit time limitation does not indicate that the duration of the right was indefinite, rather that there was no such limitation. Likewise, the omission of an explicit time limitation with regard to the validity of the WEBER mark does not indicate that there is an indefinite date upon which the grant of that concession expires. Reading the contract as a whole, the intent of the parties is clear. There is "no ambiguity in the [1974 Agreement] and

13

there was a meeting of the minds as to the future course of business between the parties." *See Mori Lee*, 325 Ga. App. at 630.

The 1974 Agreement's terms are sufficiently definite and, thus, not terminable at will. *See Triple Eagle*, 307 Ga. App. at 19. Within the 1974 Agreement, the Parties' obligations are plainly set forth and clearly delineated. In exchange for dismissing their claims with prejudice, Weber-Stephen Products Company gave W.C. Bradley Company the right to market a kettle grill as long as it did not use the names or trademarks "WEBSTER, WILLIAM WEBSTER, and variants thereof." (Doc. 24-3.)

In support of its position, Defendant cites several cases in which Georgia courts have held a contract indefinite for lack of a termination date. (Doc. 44-1 (citing *Voyles*, 221 Ga. at 305; *Jenkins v. Ga. Dept. of Corrs.*, 279 Ga. App. 160 (2006); *Morris v. Park Newspapers of Ga., Inc.*, 149 Ga. App. 674 (1979)).) However, these cases and the provisions at issue therein are distinguishable from the present facts. While Georgia law requires that contract provisions regarding employment or requiring recurring performance be of definite duration, *see Voyles*, 221 Ga. App. at 305; *Jenkins*, 279 Ga. App. at 161; *Morris*, 149 Ga. App. at 674, neither employment nor recurring performance are at issue in the present case.

Finally, Defendant cites several cases outside of Georgia in which courts have extended their holdings to require that provisions covering licensing and distributorship agreements require a termination date or event in order to avoid indefiniteness. (Doc. 24-1 (citing *Super Wash v. Sterling*, 2006 WL 533362 (N.D. Ill. March 2, 2006) (trademark licensing agreement); (*Nance v. Equinox Music*, 2010 WL 4340469 (N.D. Ill. Oct. 22, 2010) (copyright licensing agreement); *Abbot Labs v. Sandoz*, 2010 WL 1948185 (N.D. Ill. May 12, 2010) (exclusive distributorship agreement); *Jespersen v. Minn. Min. & Mfg. Co.*, 183 Ill. 2d 290 (1998) (distributorship agreement)).) Defendant argues that: (1) Paragraph Six grants only a license; and (2) the cases cited as applicable to licensing agreements are persuasive in the case. (Doc. 24-1.) However, these cases are unpersuasive for three reasons. First, Georgia courts have not yet extended their holdings to require that licensing agreements contain a termination date or event in order to be definite. Second, as discussed above, Paragraph Six gives Plaintiffs something more than the license explicitly described. Third, even if Paragraph Six

14

granted no more than a license, and Georgia courts had spoken to whether licensing agreements require termination dates to be definite, those cases would not be applicable as the license provision of Paragraph Six is, by its plain meaning, of definite duration. "[A contract's terms] will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." *Triple Eagle*, 307 Ga. App. at 19 (holding that the phrase "suitable period of time" did not render settlement agreement unenforceable); *see also Mori Lee,* 325 Ga. App. at 630 (holding that an agreement continuing "for as long as the parties conducted business" was not void because there was a meeting of the minds as to the future course of business between the parties); *Alexis, Inc. v. Werbell*, 209 Ga. 665, 666 (1953) (contract providing that it would be binding so long as a corporation existed was enforceable because "the time during which the contract could be of force is definitely fixed").

Under the plain language of Paragraph Six, it is clear that the signatories intended the license granted therein to continue beyond application Serial No. 413, 832. The provision states that the license granted will continue "under any registration that may issue therefrom as well as any continuation or substitution of" application Serial No. 413,832. (Doc. 24-3 at 3.) Clearly, the Parties contemplated a continuing relationship between them through the granting of this license, which they indicated would be Plaintiffs' so long as any trademark under application Serial No. 413,832, or any continuation or substitution thereof, was or is in effect. Further, the time during which the license portion of Paragraph Six could be of force is definitely fixed, as the license would expire with the trademark issuing from application Serial No. 413, 832, or the expiration of any trademark issuing from continuation or substitution of same. As such, even if Paragraph Six contemplated no more than a license, it is of definite duration. *See Mori Lee*, 325 Ga. App. at 630; *Alexis,* 209 Ga. at 666.

Because the terms of the 1974 Agreement are sufficiently definite and not of the type required by Georgia law to include a termination date or event in order to be binding, the 1974 Agreement has not been lawfully terminated on the base of indefiniteness.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment (Doc. 24) is **DENIED**. To the extent that it argues that the 1974 Agreement was not lawfully terminated, and to the extent that it argues that the *res judicata* effects of the 1974 Agreement are binding on Plaintiffs and Defendant, Plaintiffs' Cross Motion (Doc. 35) is **GRANTED**. Finally, Plaintiffs W.C. Bradley Co. and Char-Broil, LLC's Motion for Oral Argument on Cross-Motions for Summary Judgment (Doc. 45) is **DENIED**.

**SO ORDERED**, this  1st  day of September, 2017.


 /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**